UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ANDY MAHLER,<br>LINDA LEE,<br>SHANE MURPHY,<br>ROBBIE HEINRICH,<br>HEARTWOOD,<br>PROTECT OUR WOODS,<br>INDIANA FOREST ALLIANCE INC, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )  No. 4:24-cv-00174-TWP-KMB<br>) |
| UNITED STATES FOREST SERVICE,<br>THOMAS J. VILSACK in his official capacity as<br>Secretary of the Department of Agriculture,<br>UNITED STATES DEPARTMENT OF<br>AGRICULTURE,<br>RANDY MOORE in his official capacity as Chief<br>of the United States Forest Service, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on a Motion to Dismiss for Lack of Subject Matter Jurisdiction (Filing No. 45) filed pursuant to Federal Rule of Civil Procedure 12(b)(1) by Defendants the United States Forest Service, Thomas J. Vilsack, the United States Department of Agriculture, and Randy Moore (collectively, "Defendants"). In 2023, a tornado ripped through southern Indiana, damaging a portion of the Paoli Experimental Forest, an area within the larger Hoosier National Forest. Plaintiffs Andy Mahler, Linda Lee, Shane Murphy, Robbie Heinrich, Heartwood, Protect Our Woods, and Indiana Forest Alliance, Inc. (collectively, "Plaintiffs") filed this action challenging the legality of Defendants' tornado-recovery operations, known as the Paoli Tornado Response and Research Project (the "Paoli Project"). Plaintiffs allege that Defendants improperly excluded the Paoli Project from environmental reporting requirements and began

conducting work before adequately studying its environmental effects. Defendants now contend that all the work opposed by Plaintiffs has been completed or will not proceed, so Plaintiffs' claims are moot, and this Court no longer has subject matter jurisdiction. For the reasons discussed in this Order, the Court agrees and **grants** Defendants' Motion to Dismiss.

## I.   BACKGROUND

These background facts are not intended to provide a comprehensive explanation of all the facts in this case; rather, it provides the background relevant to the issues before the Court.

Plaintiffs initiated this action, in part, under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–47. NEPA generally requires federal agencies to prepare reports about the environmental impact of their proposed actions. However, a proposed action may be "categorically excluded" from these reporting requirements if the agency determines that the action normally does not have a significant environmental effect. If a "categorical exclusion" applies, then the agency need only evaluate whether "extraordinary circumstances" result in a normally excluded action having a significant effect. If no extraordinary circumstances exist, then the agency may apply the categorical exclusion and implement the action without further reporting.

On August 7, 2023, a long-track tornado caused extensive damage to 281 acres of the Paoli Experimental Forest within the Hoosier National Forest. In December 2023, a few months after the tornado, the Forest Service issued a notice for the Paoli Project. *Id.* The Forest Service proposed 138 acres of salvage logging, debris removal, deer fencing, and tree planting. In January 2024, some of the Plaintiffs submitted written objections to the proposed Paoli Project, and by spring 2024, Protect Our Woods and Heartwood had retained counsel and announced their readiness to sue (Filing No. 30-2 at 1, 20). As required by its NEPA regulations, the Forest Service considered the seven resource conditions set forth in 36 C.F.R. § 220.6(b)(1) and determined that no extraordinary circumstances warranted further environmental analysis in an Environmental

Assessment or Environmental Impact Statement. In August 2024, the Forest Service issued its Decision Memorandum authorizing the Paoli Project and determining that three categorical exclusions applied. Two months later, Plaintiffs began corresponding with the Forest Service about potential litigation. Despite Plaintiffs' efforts, the Forest Service never agreed to pause or stop work, and logging work began on December 11, 2024 (Filing No. 46-1 ¶ 3).

Five days after work began, Plaintiffs filed their Complaint (Filing No. 1), followed by their Motion for Temporary Restraining Order (Filing No. 8) and first Motion for Preliminary Injunction (Filing No. 9). On December 23, 2024, the Court denied the Motion for Temporary Restraining Order, finding that Plaintiffs had not clearly shown that they would suffer imminent irreparable harm before Defendants could be heard (Filing No. 16). Following Court conferences and expedited discovery, Plaintiffs filed their second Motion for Preliminary Injunction (Filing No. 26). In February 2025, the Court heard argument on, and then denied, Plaintiffs' second Motion for Preliminary Injunction (the "Preliminary Injunction Order") because Plaintiffs failed to adequately show a likelihood of irreparable harm (Filing No. 42).

On March 21, 2025, Defendants filed the instant Motion to Dismiss, reporting that logging activities for the Paoli Project were completed as of March 4, 2025 (Filing No. 46-1 ¶ 3), that scheduled debris removal near a cave of hibernating bats has been postponed until the bats leave, *id.* ¶ 4, and that deer fencing will not occur, *id.* ¶ 6. Tree planting and debris removal in other areas will proceed, but Plaintiffs have not opposed those activities (Filing No. 46 at 3; Filing No. 1). Plaintiffs contend that because the Paoli Project is complete, "this Court cannot grant Plaintiffs any effectual or meaningful relief, and Plaintiffs' claims are both constitutionally and prudentially moot." (Filing No. 46 at 1). Defendants therefore move to dismiss Plaintiffs' claims as moot. The parties have submitted response and reply briefs, as well as supplemental briefs on intervening

3

regulatory changes regarding categorical exclusions. The Motion to Dismiss is now ripe for the Court's review.

## II.    LEGAL STANDARD

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). Further, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation modified). Article III of the United States Constitution confers on the federal courts jurisdiction over "cases" and "controversies." U.S. Const. Art. III, 2, cl. 1. Article III jurisdiction requires that there be a direct injury to the plaintiffs. Both litigants must also have a personal interest in the case at the beginning of the litigation, and their interests must persist throughout its entirety. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980). "[A] case is moot [and federal courts have no jurisdiction] when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 297 (2000); *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Therefore, "[n]o justiciable controversy is presented when the parties seek adjudication of only a political question, when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action." *Flast v. Cohen*, 392 U.S. 83, 96 (1968).

## III.    DISCUSSION

Defendants argue that because the allegedly injurious work (logging, debris removal near hibernating bats, and deer fencing) is either complete or not proceeding, there is no longer any

meaningful way to redress Plaintiffs' alleged injuries (Filing No. 46 at 10–11). Plaintiffs do not dispute that, under the general mootness standard, their claims are moot. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *see also* (Filing No. 26 at 5). Plaintiffs instead contend their claims fall within a narrow exception to mootness—cases "capable of repetition yet evading review." *United States v. Sanchez-Gomez*, 584 U.S. 381, 383 (2018); *see Lewis v. Con'l Bank Corp.*, 494 U.S. 472, 481 (1990). The Court therefore focuses solely on whether this exception applies.

The "capable of repetition yet evading review" doctrine "applies only in exceptional situations, when two conditions are met: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Loertscher v. Anderson*, 893 F.3d 386, 394–95 (7th Cir. 2018) (citation omitted).

As to the first prong, Plaintiffs argue that whenever an agency wrongfully applies a categorical exclusion to avoid NEPA reporting requirements for a "short duration project," plaintiffs will be unable to challenge the project before it is completed, and the agency's NEPA violation will evade judicial review (Filing No. 47 at 5). Defendants respond that "projects falling within a categorical exclusion are not necessarily short in duration." (Filing No. 48 at 4). But even short-term projects, like the logging work at issue here, are not incapable of timely judicial review because they can be preliminarily enjoined. (Filing No. 46 at 7); *see Headwaters, Inc. v. Bureau of Land Mgmt., Medford Dist.*, 893 F.2d 1012, 1016 (9th Cir. 1998) (holding that timber sales did not satisfy the "evasion" prong because "[a]ny further timber sales . . . can be attacked in court and restrained if the court finds reason to restrain them").

Both sides acknowledge that, despite waiting until after the Paoli Project work had already begun to file suit,[1] Plaintiffs still had an opportunity to conduct expedited discovery and file three motions for injunctive relief before completion of the logging work (Filing No. 46 at 8–9; Filing No. 47 at 2). In the cases cited by Defendants, courts repeatedly confirmed that the "capable of repletion yet evading review" exception to mootness does not apply where plaintiffs had an opportunity to seek immediate injunctive relief, regardless of whether the plaintiffs took advantage of that opportunity (Filing No. 46 at 7–8).

Plaintiffs nevertheless argue that Defendants' challenged actions evade judicial review because preliminary injunctions are sometimes hard to obtain. Specifically, Plaintiffs assert that it can be "exceedingly difficult" for plaintiffs to obtain evidence of irreparable harm in cases like this one, where the agency uses a categorical exclusion and does not prepare any report on the project's environmental impacts (Filing No. 47 at 4). Plaintiffs contend that they, and other citizens, are therefore placed at a "significant disadvantage in trying to obtain evidence to satisfy the preliminary injunction standard burden of showing likely irreparable harm." *Id.* at 5.

This Court has previously acknowledged that "at the preliminary injunction stage, there may be a disparity in information between the parties." *Mahler v. U.S. Forest Serv.*, No. 24-cv-174, 2025 WL 447719, at *8 (S.D. Ind. Feb. 10, 2025). But unequal access to information does not make preliminary injunctions unobtainable in cases like this one, so similar challenged actions will not necessarily evade judicial review. Indeed, the Court listed several ways in which Plaintiffs could have sought evidence of irreparable harm in this case, which might have led to a different result. *Id.* at *8–9 (noting that plaintiffs did not request evidence regarding irreparable harm in

---

[1] Plaintiffs contend that "good faith pre-litigation negotiation efforts" do not "preclude[] application of the mootness exception." (Filing No. 47 at 6–7). Nevertheless, the fact that Plaintiffs had months in which to pursue a preliminary injunction before work even began shows that the challenged action was capable of judicial review. Negotiation and litigation are not mutually exclusive, and Plaintiffs had the right and ability to sue well before December 2024.

expedited discovery, did not prepare affidavits about irreparable harm, consult with third-party witnesses, or elicit testimony from any witnesses about irreparable harm at oral argument). To be sure, plaintiffs in several other cases involving the use of categorical exclusions have successfully obtained preliminary injunctions. *E.g.*, *Al. for the Wild Rockies v. Higgins*, 690 F. Supp. 3d 1177 (D. Idaho 2023); *Nat'l Post Office Collaborative v. Donahoe*, No. 13cv1406, 2013 WL 5818889 (D. Conn. Oct. 28, 2013); *Los Padres Forestwatch v. U.S. Forest Serv.*, 776 F. Supp. 2d 1042 (N.D. Cal. 2011); *Comm. for Idaho's High Desert v. Collinge*, 148 F. Supp. 2d 1097 (D. Idaho 2001); *see RESTORE: The N. Woods v. U.S. Dep't of Agric.*, 968 F. Supp. 168 (D. Vt. 1997) (granting summary judgment and permanent injunction in favor of plaintiff less than one month after action was filed). The Court agrees with Defendants that it would be improper to hold that Defendants' challenged action will evade judicial review simply because Plaintiffs were unsuccessful in obtaining a preliminary injunction in this case.

Plaintiffs argue that it would be unjust to render their claims moot because, despite being unable to show likely irreparable harm for a preliminary injunction, they can show 'potential significant harm" precluding the use of a categorical exclusion and are thus likely to succeed on the merits of their claims[2] (Filing No. 3–6). However, as Defendants correctly note on reply, the merits of Plaintiffs' claims and the availability of timely judicial review are wholly separate inquiries (Filing No. 48 at 7).

Forestry projects, including logging projects, can certainly vary in length. But even for relatively short projects approved through the application of categorical exclusions, there is no reason to believe that Plaintiffs—despite their failure to successfully obtain a preliminary

---

[2] For clarity, the Court reiterates that despite contrasting these standards, the Preliminary Injunction Order did not address the merits of Plaintiffs' claims. *Mahler*, 2025 WL 447719, at *9 (denying motion for preliminary injunction due to failure to show likely irreparable harm and explicitly declining not to address other threshold requirements, including likelihood of success on merits). This Order likewise takes no position on the merits of Plaintiffs' claims.

injunction in this case—would be unable to do so in the future should a similar situation arise. The first prong of the "capable of repetition yet evading review" exception is therefore not met.

As to the second prong, Plaintiffs argue there is a reasonable expectation that they will be subjected to the same agency action again because destructive tornadoes frequently pass through the Hoosier National Forest, and because the Forest Service frequently (and with increasing frequency) uses categorical exclusions to approve short-term logging operations (Filing No. 47 at 8–9). Defendants respond that the challenged action in this case is narrower and more fact-specific than Plaintiffs describe, and it is not reasonable to expect that this same controversy between the same parties will arise again (Filing No. 46 at 8–9; Filing No. 48 at 4–5).

The Court again agrees with Defendants. The challenged action here is Defendants' use of a categorical exclusion to approve logging work in a specific area in the Hoosier National Forest to remediate damage from a particularly devastating tornado. The fact that tornadoes are common in southern Indiana, and the fact that the Forest Service regularly applies categorical exclusions for logging projects, does not make it reasonable to expect that Plaintiffs will be subjected to the same challenged agency action again. *See Citizens for Appropriate Rural Roads, Inc. v. Foxx*, No. 11-cv-1031, 2015 WL 179571, at *7 (S.D. Ind. Jan. 14, 2025) ("Although the state and federal governments will, of course, commence other highway projects affecting other people's land, it is unlikely that these particular landowners will be suffering this type of alleged injury again.").

This case is readily distinguishable from other cases in which the courts have found the "reasonable expectation" prong to be satisfied, like cases involving elections, *see Int'l Org. of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 472–473 (1991), media access to court trials, *Globe Newspaper Co. v. Super. Ct. for Norfolk Cnty.*, 457 U.S. 596, 602 (1982), labor-management disputes, *Burlington N. R.R. Co. v. Bhd. of Maint. of Way Emps.*, 481 U.S. 429, 436 n. 4 (1987),

and human pregnancy, *Roe v. Wade*, 410 U.S. 113, 125 (1973). Plaintiffs are correct that repetition of the instant agency action may be more likely than, for example, the re-construction of a highway through the same property. *Citizens for Appropriate Rural Roads, Inc.*, 2015 WL 179571, at *7. But this case is clearly more like the highway case than the cases in which the "reasonable expectation" prong has been met. The Court therefore finds that there is no reasonable expectation that these Plaintiffs will again be subjected to the same challenged action.[3]

This action no longer presents any live dispute for which the Court may grant meaningful relief, and the "capable of repetition yet evading judicial review" exception to the mootness doctrine does not apply. Plaintiffs' claims are therefore moot, and Defendants' Motion to Dismiss must be **granted**.

## IV.    CONCLUSION

For the reasons explained above, Defendants' Motion to Dismiss (Filing No. 45) is **GRANTED**. Plaintiffs' claims are **DISMISSED without prejudice**[4] for lack of subject matter jurisdiction.

Final judgment will issue under separate entry.

**SO ORDERED**.

Date:    3/25/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

---

[3] Because the Court finds that the "reasonable expectation" prong is not met for the reasons in this Order, the Court declines to decide whether Plaintiffs' claims are also moot in light of recent regulatory changes. The Court thanks the parties for their helpful and informative supplemental briefing on the issue (Filing No. 52; Filing No. 53).
[4] A dismissal for lack of subject-matter jurisdiction is necessarily without prejudice. *See Kowalski v. Boliker*, 893 F.3d 987, 994 (7th Cir. 2018).

Distribution:

Mick G. Harrison
Law Office of Mick G. Harrison
mickharrisonesq@gmail.com

Reade Wilson
DOJ-Enrd
reade.wilson@usdoj.gov